*95 Justice Sotomayor
delivered the opinion of the Court.
Under § 282 of the Patent Act of 1952, “[a] patent shall be presumed valid” and “[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.” 35 U. S. C. §282. We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.
I
A
Pursuant to its authority under the Patent Clause, U. S. Const., Art. I, §8, cl. 8, Congress has charged the United States Patent and Trademark Office (PTO) with the task of examining patent applications, 35 U. S. C. § 2(a)(1), and issu *96 ing patents if “it appears that the applicant is entitled to a patent under the law,” § 131. Congress has set forth the prerequisites for issuance of a patent, which the PTO must evaluate in the examination process. To receive patent protection a claimed invention must, among other things, fall within one of the express categories of patentable subject matter, §101, and be novel, §102, and. nonobvious, §103. Most relevant here, the on-sale bar of § 102(b) precludes patent protection for any “invention” that was “on sale in this country” more than one year prior to the filing of a patent application. See generally Pfaff v. Wells Electronics, Inc., 525 U. S. 55, 67-68 (1998). In evaluating whether these and other statutory conditions have been met, PTO examiners must make various factual determinations — for instance, the state of the prior art in the field and the nature of the advancement embodied in the invention. See Dickinson v. Zurko, 527 U. S. 150, 153 (1999).
Once issued, a patent grants certain exclusive rights to its holder, including the exclusive right to use the invention during the patent’s duration. To enforce that right, a patentee can bring a civil action for infringement if another person “without authority makes, uses, offers to sell, or sells any patented invention, within the United States.” § 271(a); see also §281.
Among other defenses under §282 of the Patent Act of 1952 (1952 Act), an alleged infringer may assert the invalidity of the patent — that is, he may attempt to prove that the patent never should have issued in the first place. See §§ 282(2), (3). A defendant may argue, for instance, that the claimed invention was obvious at the time and thus that one of the conditions of patentability was lacking. See § 282(2); see also § 103. “While the ultimate question of patent validity is one of law,” Graham v. John Deere Co. of Kansas City, 383 U. S. 1, 17 (1966) (citing Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U. S. 147, 155 (1950) (Douglas, J., concurring)); see post, at 114 (Breyer, J., con *97 curring), the same factual questions underlying the PTO’s original examination of a patent application will also bear on an invalidity defense in an infringement action, see, e. g., 383 U. S., at 17 (describing the “basic factual inquiries” that form the “background” for evaluating obviousness); Pfaff, 525 U. S., at 67-69 (same, as to the on-sale bar).
In asserting an invalidity defense, an alleged infringer must contend with the first paragraph of §282, which provides that “[a] patent shall be presumed valid” and “[t]he burden of establishing invalidity . .. rest[s] on the party asserting such invalidity.”[1] Under the Federal Circuit’s reading of § 282, a defendant seeking to overcome this presumption must persuade the factfinder of its invalidity defense by clear and convincing evidence. Judge Rich, a principal drafter of the 1952 Act, articulated this view for the court in American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F. 2d 1350 (CA Fed. 1984). There, the Federal Circuit held that §282 codified “the existing presumption of validity of patents,” id., at 1359 (internal quotation marks omitted)— what, until that point, had been a common-law presumption based on “the basic proposition that a government agency such as the [PTO] was presumed to do its job,” ibid. Relying on this Court’s pre-1952 precedent as to the “force of the presumption,” ibid, (citing Radio Corp. of America v. Radio Engineering Laboratories, Inc., 293 U. S. 1 (1934) (RCA)), Judge Rich concluded:
“[Section] 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence.” 725 F. 2d, at 1360.
*98 In the nearly 30 years since American Hoist, the Federal Circuit has never wavered in this interpretation of § 282. See, e. g., Greenwood v. Hattori Seiko Co., 900 F. 2d 238, 240-241 (1990); Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co., 204 F. 3d 1360, 1367 (2000); ALZA Corp. v. Andrx Pharmaceuticals, LLC, 603 F. 3d 935, 940 (2010).
B
Respondents i4i Limited Partnership and Infrastructures for Information Inc. (collectively, i4i) hold the patent at issue in this suit. The i4i patent claims an improved method for editing computer documents, which stores a document’s content separately from the metacodes associated with the document’s structure. In 2007, i4i sued petitioner Microsoft Corporation for willful infringement, claiming that Microsoft’s manufacture and sale of certain Microsoft Word products infringed i4i’s patent. In addition to denying infringement, Microsoft counterclaimed and sought a declaration that i4i’s patent was invalid and unenforceable.
Specifically and as relevant here, Microsoft claimed that the on-sale bar of § 102(b) rendered the patent invalid, pointing to i4i’s prior sale of a software program known as S4. The parties agreed that, more than one year prior to the filing of the i4i patent application, i4i had sold S4 in the United States. They presented opposing arguments to the jury, however, as to whether that software embodied the invention claimed in i4i’s patent. Because the software’s source code had been destroyed years before the commencement of this litigation, the factual dispute turned largely on trial testimony by S4’s two inventors — also the named inventors on the i4i patent — both of whom testified that S4 did not practice the key invention disclosed in the patent.
Relying on the undisputed fact that the S4 software was never presented to the PTO examiner, Microsoft objected to i4d’s proposed instruction that it was required to prove its invalidity defense by clear and convincing evidence. In *99 stead, “if an instruction on the ‘clear and convincing’ burden were [to be] given,” App. 124a, n. 8, Microsoft requested the following:
“‘Microsoft’s burden of proving invalidity and unen-forceability is by clear and convincing evidence. However, Microsoft’s burden of proof with regard to its defense of invalidity based on prior art that the examiner did not review during the prosecution of the patent-in-suit is by preponderance of the evidence.’” Ibid.
Rejecting the hybrid standard of proof that Microsoft advocated, the District Court instructed the jury that “Microsoft has the burden of proving invalidity by clear and convincing evidence.” App. to Pet. for Cert. 195a.
The jury found that Microsoft willfully infringed the i4d patent and that Microsoft failed to prove invalidity due to the on-sale bar or otherwise. Denying Microsoft’s post-trial motions, the District Court rejected Microsoft’s contention that the court improperly instructed the jury on the standard of proof. The Court of Appeals for the Federal Circuit affirmed.[2] 598 F. 3d 831, 848 (2010). Relying on its settled interpretation of § 282, the court explained that it could “discern [no] error” in the jury instruction requiring Microsoft to prove its invalidity defense by clear and convincing evidence. Ibid. We granted certiorari. 562 U. S. 1060 (2010).
According to Microsoft, a defendant in an infringement action need only persuade the jury of an invalidity defense by a preponderance of the evidence. In the alternative, Microsoft insists that a preponderance standard must apply at least when an invalidity defense rests on evidence that was *100 never considered by the PTO in the examination process. We reject both contentions.[3]
A
Where Congress has prescribed the governing standard of proof, its choice controls absent “countervailing constitutional constraints.” Steadman v. SEC, 450 U. S. 91, 95 (1981). The question, then, is whether Congress has made such a choice here.
As stated, the first paragraph of §282 provides that “[a] patent shall be presumed valid” and “[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.” Thus, by its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense. But, while the statute explicitly specifies the burden of proof, it includes no express articulation of the standard of proof.[4]
*101 Our statutory inquiry, however, cannot simply end there. We begin, of course, with “the assumption that the ordinary meaning of [the] language” chosen by Congress “accurately expresses the legislative puipose.” Engine Mfrs. Assn. v. South Coast Air Quality Management Dist., 541 U. S. 246, 252 (2004) (internal quotation marks omitted). But where Congress uses a common-law term in a statute, we assume the “term . . . comes with a common law meaning, absent anything pointing another way.” Safeco Ins. Co. of America v. Burr, 551 U. S. 47, 58 (2007) (citing Beck v. Prupis, 529 U. S. 494, 500-501 (2000)). Here, by stating that a patent is “presumed valid,” §282, Congress used a term with a settled meaning in the common law.
Our decision in RCA, 293 U. S. 1, is authoritative. There, tracing nearly a century of ease law from this Court and others, Justice Cardozo wrote for a unanimous Court that “there is a presumption of validity, a presumption not to be overthrown except by clear and cogent evidence.” Id., at 2. Although the “force” of the presumption found “varying expression” in this Court and elsewhere, id., at 7, Justice Cardozo explained, one “common core of thought and truth” unified the decisions:
“[O]ne otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance. If that is true where the assailant connects himself in some way with the title of the true inventor, it is so a fortiori where he is a stranger to the invention, without claim of title of his own. If it is *102 true where the assailant launches his attack with evidence different, at least in form, from any theretofore produced in opposition to the patent, it is so a bit more clearly where the evidence is even verbally the same.” Id., at 8 (citation omitted).[5]
The common-law presumption, in other words, reflected the universal understanding that a preponderance standard of proof was too “dubious” a basis to deem a patent invalid. Ibid.; see also id., at 7 (“[A] patent ... is presumed to be valid until the presumption has been overcome by convincing evidence of error”).
Thus, by the time Congress enacted §282 and declared that a patent is “presumed valid,” the presumption of patent validity had long been a fixture of the common law. According to its settled meaning, a defendant raising an invalidity defense bore “a heavy burden of persuasion,” requiring proof of the defense by clear and convincing evidence. Id., at 8. That is, the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof. Under the general rule that a common-law term comes with its common-law meaning, we cannot conclude that Congress intended to “drop” the heightened standard of proof from the presumption simply because § 282 fails to reiterate it expressly. Neder v. United States, 527 *103 U. S. 1, 23 (1999); see also id., at 21 (“‘Where Congress uses terms that have accumulated settled meaning under ... the common law, [we] must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms’ ” (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U. S. 318, 322 (1992))); Standard Oil Co. of N. J. v. United Sates, 221 U. S. 1, 59 (1911) (“[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense ...”). “On the contrary, we must presume that Congress intended to incorporate” the heightened standard of proof, “unless the statute otherwise dictates.” Neder, 527 U. S., at 23 (internal quotation marks omitted).
We recognize that it may be unusual to treat a presumption as alone establishing the governing standard of proof. See, e. g., J. Thayer, Preliminary Treatise on Evidence at the Common Law 336-337 (1898) (hereinafter Thayer) (“When ... we read that the contrary of any particular presumption must be proved beyond a reasonable doubt, ... it is to be recognized that we have something superadded to the rule of presumption, namely, another rule as to the amount of evidence which is needed to overcome the presumption”). But given how judges, including Justice Cardozo, repeatedly understood and explained the presumption of patent validity, we cannot accept Microsoft’s argument that Congress used the words “presumed valid” to adopt only a procedural device for “shifting the burden of production,” or for “shifting both the burden of production and the burden of persuasion.” Brief for Petitioner 21-22 (emphasis deleted). Whatever the significance of a presumption in the abstract, basic principles of statutory construction require us to assume that Congress meant to incorporate “the cluster of ideas” attached to the common-law term it adopted. Beck, 529 U. S., at 501 (internal quotation marks omitted). And RCA leaves no doubt that attached to the common-law presumption of patent va *104 lidity was an expression as to its “force,” 293 U. S., at 7— that is, the standard of proof required to overcome it.[6]
Resisting the conclusion that Congress adopted the heightened standard of proof reflected in our pre-1952 cases, Microsoft contends that those cases applied a clear-and-convincing standard of proof only in two limited circumstances, not in every case involving an invalidity defense. First, according to Microsoft, the heightened standard of proof applied in cases “involving oral testimony of prior invention,” simply to account for the unreliability of such testimony. Brief for Petitioner 25. Second, Microsoft tells us, the heightened standard of proof applied to “invalidity challenges based on priority of invention,” where that issue had previously been litigated between the parties in PTO proceedings. Id., at 28.
Squint as we may, we fail to see the qualifications that Microsoft purports to identify in our cases. They certainly make no appearance in RCAs explanation of the presumption of patent validity. RCA simply said, without qualification, “that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance.” 293 U. S., at 8; see also id., at 7 (“A patent regularly issued, and even more obviously a patent issued after a hearing of all the rival claimants, is pre *105 sumed to be valid until the presumption has been overcome by convincing evidence of error” (emphasis added)). Nor do they appear in any of our cases as express limitations on the application of the heightened standard of proof. Cf., e. g., Smith v. Hall, 301 U. S. 216, 233 (1937) (citing RCA for the proposition that a “heavy burden of persuasion... rests upon one who seeks to negative novelty in a patent by showing prior use”); Mumm v. Jacob E. Decker & Sons, 301 U. S. 168, 171 (1937) (“Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that every reasonable doubt should be resolved against him” (internal quotation marks omitted)). In fact, Microsoft itself admits that our cases “could be read as announcing a heightened standard applicable to all invalidity assertions.” Brief for Petitioner 30 (emphasis deleted).
Furthermore, we cannot agree that Microsoft’s proposed limitations are inherent — even if unexpressed — in our pre-1952 cases. As early as 1874 we explained that the burden of proving prior inventorship “rests upon [the defendant], and every reasonable doubt should be resolved against him,” without tying that rule to the vagaries and manipulability of oral testimony. Coffin v. Ogden, 18 Wall. 120, 124 (1874). And, more than 60 years later, we applied that rule where the evidence in support of a prior-use defense included documentary proof — not just oral testimony — in a case presenting no priority issues at all. See Smith, 301 U. S., at 221, 233. Thus, even if Congress searched for some unstated limitations on the heightened standard of proof in our cases, it would have found none.[7]
*106 Microsoft also argues that the Federal Circuit's interpretation of § 282’s statement that “[a] patent shall be presumed valid” must fail because it renders superfluous the statute’s additional statement that “[t]he burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity.” We agree that if the presumption imposes a heightened standard of proof on the patent challenger, then it alone suffices to establish that the defendant bears the burden of persuasion. Cf. Director, Office of Workers’ Compensation Programs v. Greenwich Collieries, 512 U. S. 267, 278 (1994) (“A standard of proof. . . can apply only to a burden of persuasion”). Indeed, the Federal Circuit essentially recognized as much in American Hoist. See 725 F. 3d, at 1359.
But the canon against superfluity assists only where a competing interpretation gives effect “ 'to every clause and word of a statute.’” Duncan v. Walker, 533 U. S. 167, 174 (2001) (quoting United States v. Menasche, 348 U. S. 528, 538-539 (1955)); see Bruesewitz v. Wyeth LLC, 562 U. S. 223, 236 (2011). Here, no interpretation of § 282 — including the two alternatives advanced by Microsoft — avoids excess language. That is, if the presumption only “allocates the bur *107 den of production,” Brief for Petitioner 21, or if it instead “shift[s] both the burden of production and the burden of persuasion,” id., at 22 (emphasis deleted), then it would be unnecessary in light of § 282’s statement that the challenger bears the “burden of establishing invalidity.” See 21B Fed. Practice §5122, at 401 (“[T]he same party who has the burden of persuasion also starts out with the burden of producing evidence”). “There are times when Congress enacts provisions that are superfluous,” Corley v. United States, 556 U. S. 303, 325 (2009) (Alito, J., dissenting), and the kind of excess language that Microsoft identifies in §282 is hardly unusual in comparison to other statutes that set forth a presumption, a burden of persuasion, and a standard of proof. Cf., e. g., 28 U. S. C. § 2254(e)(1).[8]
*108 B
Reprising the more limited argument that it pressed below, Microsoft argues in the alternative that a preponderance standard must at least apply where the evidence before the factfinder was not before the PTO during the examination process. In particular, it relies on KSR Int’l Co. v. Teleflex Inc., 550 U. S. 398 (2007), where we observed that, in these circumstances, “the rationale underlying the presumption-that the PTO, in its expertise, has approved the claim-seems much diminished.” Id., at 426.
That statement is true enough, although other rationales may animate the presumption in such circumstances. See The Barbed Wire Patent, 143 U. S. 275, 292 (1892) (explaining that because the patentee “first published this device; put it upon record; made use of it for a practical purpose; and gave it to the public ... doubts . .. concerning the actual inventor ... should be resolved in favor of the patentee”); cf. Brief for United States as Amicus Curiae 33 (arguing that even when the administrative correctness rationale has no relevance, the heightened standard of proof “serves to protect the patent holder’s reliance interests” in disclosing an invention to the public in exchange for patent protection). The question remains, however, whether Congress has specified the applicable standard of proof. As established, Congress did just that by codifying the common-law presumption of patent validity and, implicitly, the heightened standard of proof attached to it.
Our pre-1952 cases never adopted or endorsed the kind of fluctuating standard of proof that Microsoft envisions. And they do not indicate, even in dicta, that anything less than a *109 dear-and-convincing standard would ever apply to an invalidity defense raised in an infringement action. To the contrary, the Court spoke on this issue directly in RCA, stating that because the heightened standard of proof applied where the evidence before the court was “different” from that considered by the PTO, it applied even more clearly where the evidence was identical. 293 U. S., at 8. Likewise, the Court’s statement that a “dubious preponderance” will never suffice to sustain an invalidity defense, ibid., admitted of no apparent exceptions. Finally, this Court often applied the heightened standard of proof without any mention of whether the relevant prior-art evidence had been before the PTO examiner, in circumstances strongly suggesting it had not. See, e. g., Smith, 301 U. S., at 227, 233.[9]
Nothing in §282’s text suggests that Congress meant to depart from that understanding to enact a standard of proof that would rise and fall with the facts of each case. Indeed, had Congress intended to drop the heightened standard of proof where the evidence before the jury varied from that before the PTO — and thus to take the unusual and impractical step of enacting a variable standard of proof that must itself be adjudicated in each case, cf. Santosky v. Kramer, *110 455 U. S. 745, 757 (1982)[10] — we assume it would have said so expressly.
To be sure, numerous Courts of Appeals in the years preceding the 1952 Act observed that the presumption of validity is “weakened” or “dissipated” in the circumstance that the evidence in an infringement action was never considered by the PTO. See Jacuzzi Bros., Inc. v. Berkeley Pump Co., 191 F. 2d 632, 634 (CA9 1951) (“largely dissipated”); H. Schindler & Co. v. C. Saladino & Sons, Inc., 81 F. 2d 649, 651 (CA1 1936) (“weakened”); Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 107 F. 2d 105, 107 (CA4 1939) (“greatly weakened”); Butler Mfg. Co. v. Enterprise Cleaning Co., 81 F. 2d 711, 716 (CA81936) (“weakened”). But we cannot read these cases to hold or even to suggest that a preponderance standard would apply in such circumstances, and we decline to impute such a reading to Congress. Instead, we understand these cases to reflect the same eommonsense principle that the Federal Circuit has recognized throughout its existence — namely, that new evidence supporting an invalidity defense may “carry more weight” in an infringement action than evidence previously considered by the PTO, American Hoist, 725 F. 2d, at 1360. As Judge Rich explained:
*111 ‘When new evidence touching validity of the patent not considered by the PTO is relied on, the tribunal considering it is not faced with having to disagree with the PTO or with deferring to its judgment or with taking its expertise into account. The evidence may, therefore, carry more weight and go further toward sustaining the attacker’s unchanging burden.” Ibid, (emphasis deleted).
See also SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp., 225 F. 3d 1349, 1355-1356 (CA Fed. 2000) (“[T]he alleged infringer’s burden may be more easily carried because of th[e] additional [evidence]”); Group One, Ltd. v. Hallmark Cards, Inc., 407 F. 3d 1297, 1306 (CA Fed. 2005) (similar).
Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. Cf. KSR, 550 U. S., at 427. And, concomitantly, the challenger’s burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should, be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence. Cf., e. g., Mendenhall v. Cedarapids, Inc., 5 F. 3d 1557, 1563-1564 (CA Fed. 1993); see also Brief for International Business Machines Corp. as Amicus Curiae 31-37. Although Microsoft emphasized in its argument to the jury that S4 was never considered by *112 the PTO, it failed to request an instruction along these lines from the District Court. Now, in its reply brief in this Court, Microsoft insists that an instruction of this kind was warranted. Reply Brief for Petitioner 22-23. That argument, however, comes far too late, and we therefore refuse to consider it. See Rent-A-Center, West, Inc. v. Jackson, 561 U. S. 63, 75-76 (2010): cf. Fed. Rule Civ. Proc. 51(d)(1)(B).
III
The parties and their amici have presented opposing views as to the wisdom of the clear-and-convincing-evidenee standard that Congress adopted. Microsoft and its amici contend that the heightened standard of proof dampens innovation by unduly insulating “bad” patents from invalidity challenges. They point to the high invalidation rate as evidence that the PTO grants patent protection to too many undeserving “inventions.” They claim that inter partes reexamination proceedings before the PTO cannot fix the problem, as some grounds for invalidation (like the on-sale bar at issue here) cannot be raised in such proceedings. They question the deference that the PTO’s expert determinations warrant, in light of the agency’s resources and procedures, which they deem inadequate. And, they insist that the heightened standard of proof essentially causes juries to abdicate their role in reviewing invalidity claims raised in infringement actions.
For their part, i4i and its amici, including the United States, contend that the heightened standard of proof properly limits the circumstances in which a lay jury overturns the considered judgment of an expert agency. They claim that the heightened standard of proof is an essential component of the patent “bargain,” see Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U. S. 141, 150-151 (1989), and the incentives for inventors' to disclose their innovations to the public in exchange for patent protection. They disagree with the notion that the patent issuance rate is above the *113 optimal level. They explain that limits on the reexamination process reflect a judgment by Congress as to the appropriate degree of interference with patentees’ reliance interests. Finally, they maintain that juries that are properly instructed as to the application of the clear-and-convincing-evidence standard can, and often do, find an invalidity defense established.
We find ourselves in no position to judge the comparative force of these policy arguments. For nearly 30 years, the Federal Circuit has interpreted § 282 as we do today. During this period, Congress has often amended §282, see, e. g., Pub. L. 104-141, § 2, 109 Stat. 352; Pub. L. 98-417, § 203, 98 Stat. 1603; not once, so far as we (and Microsoft) are aware, has it even considered a proposal to lower the standard of proof, see Tr. of Oral Arg. 10. Moreover, Congress has amended the patent laws to account for concerns about “bad” patents, including by expanding the reexamination process to provide for inter partes proceedings. See Optional Inter Partes Reexamination Procedure Act of 1999, 113 Stat. 1501A-567, codified at 35 U. S. C. § 311 et seq. Through it all, the evidentiary standard adopted in §282 has gone untouched. Indeed, Congress has left the Federal Circuit’s interpretation of § 282 in place despite ongoing criticism, both from within the Federal Government and without.[11]
Congress specified the applicable standard of proof in 1952 when it codified the common-law presumption of patent va *114 lidity. Since then, it has allowed the Federal Circuit’s correct interpretation of §282 to stand. Any recalibration of the standard of proof remains in its hands.
* * *
For the reasons stated, the judgment of the Court of Appeals for the Federal Circuit is

Affirmed.

The Chief Justice took no part in the consideration or decision of this ease.

 As originally enacted in 1952, the first paragraph of §282 read: “A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.” 66 Stat. 812. Congress has since amended §282, inserting two sentences not relevant here and modifying the language of the second sentence to that in the text.

 Although not relevant here, the Court of Appeals modified the effective date of the permanent injunction that the District Court entered in favor of i4i. 598 F. 3d, at 863-864.

 i4i contendo that Microsoft forfeited the firot argument by failing to raise it until its merits brief in this Court. The argument, however, is within the oeope of the question presented, and bccauoe we reject it on its merits, we need not decide whether it hao been preserved.

 A preliminary word on terminology is in order. As we have said, “[t]he term ‘burden of proof’ is one of the ‘slipperiest members of the family of legal terms.’” Schaffer v. Weast, 546 U. S. 49, 56 (2005) (quoting 2 J. Strong, McCormick on Evidence §342, p. 433 (5th ed.1999) (alteration omitted)), Historically, the term has encompassed two separate burdens: the "burden of persuasion” (specifying which party loses if the evidence is balanced), as well as the “burden of production” (specifying which party must como forward with evidence at various stages in the litigation). 646 U. S., at 56. Adding more confusion, the term “burden of proof” has occasionally boon used as a synonym for “standard of proof.” E. g., Crogan v. Garner, 498 U. S. 279, 286 (1991).
Here we use “burden of proof” interchangeably with “burden of persuasion” to identify the party who must persuade the jury in its favor to prevail. We use the Lerni "standard of proof” to refer to the degree of cortainty by which the factfinder must be persuaded of a factual conclusion to find in favor of the party bearing the burden of persuasion. See Addington v. Texas, 441 U. S. 418, 423 (1979). In other words, the term *101 “standard of proof” specifies how difficult it will be for the party bearing the burden of persuasion to convince the jury of the facts in its favor. Various standards of proof are familiar — beyond a reasonable doubt, by dear and convincing evidence, and by a preponderance of the evidence. See generally 21B C. Wright & K. Graham, Federal Practice & Procedure §5122, pp. 405-411 (2d ed. 2005) (hereinafter Fed. Practice) (describing these and other standards of proof).

 Among other cases, Justice Cardozo cited Cantrell v. Wallick, 117 U. S. 689, 695-696 (1886) (“Not only is the burden of proof to make good this defence upon the party setting it up, but... every reasonable doubt should be resolved against him” (internal quotation marks omitted)); Coffin v. Ogden, 18 Wall. 120, 124 (1874) (“The burden of proof rests upon [the defendant], and every reasonable doubt should be resolved against him”); The Barbed Wire Patent, 143 U. S. 275, 285 (1892) (“[This] principle has been repeatedly acted upon in the different circuits”); and Washburn v. Gould, 29 F. Cas. 312, 320 (No. 17,214) (CC Mass. 1844) (charging jury that “if it should so happen, that your minds are led to a reasonable doubt on the question, inasmuch as it is incumbent on the defendant to satisfy you beyond that doubt, you will find for the plaintiff”).

 Microsoft objects that this reading of §282 “conflicts with the usual understanding of presumptions.” Reply Brief for Petitioner 4. In support, it relies on the “understanding” reflected in Federal Rule of Evidence 301, which explains the ordinary effect of a presumption in federal civil actions. That Rule, however, postdates the 1952 Act by nearly 30 years, and it is not dispositive of how Congress in 1952 understood presumptions generally, much less the presumption of patent validity. In any event, the word “presumption” has often been used when another term might be more accurate. See Thayer 335 (“Often... maxims and ground principles get expressed in this form of a presumption perversely and inaccurately”)- And, to the extent Congress used the words “presumed valid” in an imprecise way, we cannot fault it for following our lead.

 In a similar vein, Microsoft insists that there simply was no settled presumption of validity for Congress to codify in 1952. Microsoft points to a handful of District Court decisions, which “questioned) whether any presumption of validity was warranted,” or which “required the patentee to prove the validity of hio patent by a preponderance of tho ovidoneo.” Brief for Petitioner 24 (emphasis deleted; brackets and internal quotation *106 marks omitted); see, e. g., Ginsberg v. Railway Express Agency, Inc., 72 F. Supp. 43, 44 (SDNY 1947) (stating, in dicta, that “[i]t may now well be said that no presumption whatever arises from the grant of patent”); see also post, at 115-116 (Thomas, J., concurring in judgment). RCA makes clear, however, that the presumption of patent validity had an established meaning traceable to the mid-19th century, 293 U. S. 1, 7-8 (1934); that some lower courts doubted its wisdom or even pretended it did not exist is of no moment. Microsoft may be correct that Congress enacted § 282 to correct lower courts that required the patentee to prove the validity of a patent. See American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F. 2d 1350, 1359 (CA Fed. 1984). But the language Congress selected reveals its intent not only to specify that the defendant bears the burden of proving invalidity but also that the evidence in support of the defense must be clear and convincing.

 For those of us for whom it is relevant, the legislative history of §282 provides additional evidence that Congress meant to codify the judge-made presumption of validity, not to set forth a new presumption of its own making. The accompanying House and Senate Reports both explain that §282 “introduces a declaration of the presumption of validity of a patent, which is now a statement made by courts in decisions, but has had no expression in the statute.” H. R. Rep. No. 1923, 82d Cong., 2d Sess., 10 (1952) (hereinafter H. R. Rep.); S. Rep. No. 1979, 82d Cong., 2d Sess., 9 (1952) (hereinafter S. Rep.). To the same effect, the Reviser’s Note indicates that § 282’s “first paragraph declares the existing presumption of validity of patents.” Note following 35 U. S. C. § 282 (1952 ed.).
Prior to 1952, the existing patent laws already incorporated the sum and substance of the presumption as Microsoft would define it — that is, they “assign[ed] the burden of proving invalidity to the accused infringer,” Brief for Petitioner 14 (emphasis deleted). See 35 U. S. C. § 69 (1946 ed.) (providing that a defendant in an infringement action “may plead” and “prove on trial” the invalidity of the patent as a defense); see also Patent Act of 1870, ch. 230, § 61, 16 Stat. 208 (same); Patent Act of 1836, ch. 357, § 15, 5 Stat. 123 (similar); Patent Act of 1793, ch. XI, § 6, 1 Stat. 322 (similar); Coffin, 18 Wall., at 124 (explaining that the Patent Act of 1836 “allowed a party sued for infringement to prove, among other defences, that the patentee was not the original and first inventor of tho thing patontod, or of a substantial and material part thereof claimed to be new” (internal quotation marks omitted)). The House and Senate Reports state, how *108 ever, that § 282 established a principle that previously “had no expression in the statute.” H. R. Rep., at 10; S. Rep., at 9. Thus, because the only thing missing from §282’s predecessor was the heightened standard of proof itself, Congress must have understood the presumption of patent validity to include the heightened standard of proof attached to it.

 Microsoft cites numerous Court of Appeals decisions as support for its claim that a preponderant standard must apply in the event that the evidence in the infringement action varies from that considered by the PTO. We coo no hint of tho hybrid otandard of proof that Microsoft advocates in these cases. Indeed, in some of these cases it appears that the court even evaluatod the evidenco according to a heightened otandard of proof. See Jacuzzi Bros., Inc. v. Berkeley Pump Co., 191 F. 2d 632, 634 (CA9 1951) (“Although it is not expressly stated that th[e] conclusion [of invalidity] is based upon evidence establishing the thesis beyond a reasonable doubt, the Trial Court expressed no doubt. And the record shows that such conclusion was supported by substantial evidence”); Western Auto Supply Co. v. American-National Co., 114 F. 2d 711, 713 (CA6 1940) (concluding that the patent was invalid where the court “entertain[ed] no doubt” on the question).

 Not the lcaot of the impraetiealitioo of ouch an approach ariooa from the fact that whether a PTO examiner considered a particular reference will often be a question without a clear answer. In granting a patent, an examiner is under no duty to cite every reference he conciders. 1 Dept. of Commerce, PTO, Manual of Patent Examining Procedure §904.03, p. 900-51 (8th rev. ed. 2010) (“The examiner is not called upon to cite all references that may be available, but only the ‘best.’ Multiplying reference, any one of which its ae good ao, hut no hotter than, the others, adds to the burden and coot of prooceution and ohould therefore be avoidod” (emphasis deleted and citation omitted)); Manual of Patent Examining Procedure § 904.02, p. 129 (1st rev. ed. 1952) (same), http://www.uspto.gov/web/ offiees/pae/mpep/old/E lR3_900.pdf (all Internet materials as visited June 6, 2011, and available in Clerk of Court’s case file); see also Brief for Re-repondente 45 46 (doocribing additional impraetiealitioo). Wo ooo no indication in § 282 that Congress meant to require collateral litigation on such an inherently uncertain question.

 See, e. g., FTC, To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy 28 (Oct. 2003), http://www.ftc.gov/os/ 2003/10/innovationrpt.pdf (recommending that “legislation be enacted specifying that challonges to the validity of a patent be determined baaed on a preponderance of the evidence”); Alsup, Memo to Congress: A District Judge’s Proposal for Patent Reform, 24 Berkeley Tech. L. J. 1647, 1655 (2009) (same); Liehtman & Lemley, Rethinking Patent Law’s Presumption of Validity, 60 Stan. L. Rev. 45, 60 (2007) (proposing “statutory amendment or ... judicial reinterpretation of the existing statute and its associated caso law” to lower the standard of proof to a preponderance of the evidence (footnote omitted)).