30 C.C.P.A.(Patents)
**JACOBS et al. v. BUXTON.**
**Patent Appeal No. 4713.**

Court of Customs and Patent Appeals.
April 5, 1943.

Frederick Schafer, of Washington, D. C., and A. J. Greene, of Bridgeport, Conn., for appellants.

Bruninga & Sutherland and John H. Sutherland, all of St. Louis, Mo., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners awarding priority of the subject matter of all of the counts to appellee. The interference arises between an application of appellants, Serial No. 329,048, filed April 11, 1940, and assigned to Remington Arms Company, Inc., and a patent of appellee, No. 2,193,245, dated March 12, 1940, on an application filed September 16, 1936, assigned to Western Cartridge Company. The application of appellants reads substantially the same as the specification of the patent, and the only claims in that application are the four claims of the patent. The claims constitute the counts in this interference.

While the appeal was taken from the decision of the Board of Interference Examiners with respect to all four counts, appellants in this court have withdrawn the reasons of appeal with respect to counts 1 and 2. Therefore the appeal as to counts 1 and 2 will be dismissed. The remaining two counts, 3 and 4, read as follows:

"3. In the art of making ammunition cases, the process comprising, providing a disc of steel whose physical properties in all directions are substantially uniform, cold drawing the disc to cup shape without heat treating, and thereafter annealing the cup under conditions such as to relieve the strains therein.

"4. In the art of making ammunition cases, the process comprising, providing a disc of steel whose physical properties in all directions are substantially uniform, cold drawing the disc to cup shape, and otherwise deforming the cup all without heat treating; and thereafter annealing the cup to an extent sufficient to relieve the strains therein."

The subject matter defined by the involved counts is sufficiently described therein.

Preliminary statements which are identical in all respects were filed by each of the appellants. They allege the first written description of the invention, its disclosure to others, and reduction to practice, on or about July 11, 1931.

Appellee in his preliminary statement alleged the disclosure of the invention to others on or about May 1, 1935; the first written description of the invention on October 29, 1935; reduction to practice of the invention on or about November 1, 1935; the first drawing showing the product in various stages of manufacture December 6, 1935; and the exercise of reasonable diligence in adapting and perfecting his invention from on or about May 1, 1935.

Appellants not having filed their application until after the issuance of the patent to appellee have the burden of proving priority of invention of the subject matter defined in the counts beyond

a reasonable doubt. Appellants took testimony, while appellee relied upon his filing date, September 16, 1936, for conception and constructive reduction to practice.

It appears from the record that the appellants were endeavoring to substitute steel for the non-ferrous metal usually employed in the manufacturing of ammunition cases and parts thereof. They carried on experiments to that end during the years 1931 to 1936, in the plant of the Peters Cartridge Company, which subsequently became a subsidiary of Remington Arms Company, Inc. In those experiments they produced from steel .22 caliber rimfire cartridge shells and the metal heads and battery cups for shotgun shells.

Considerable testimony was taken, and many documents bearing upon the results of their experiments were introduced in evidence. Likewise certain shotgun shells and exploded .22 caliber rimfire cartridge shells are exhibits. The documentary evidence shows that the cartridge and shotgun shells made in the experiments were for the most part defective when shot from firearms by reason of the splitting of shells, hang fire, misfire, and difficulty in extracting the exploded shells from the weapons. Appellants were further faced with the problem of producing cartridges and shotgun shell heads which were not scalloped after those articles were cold drawn from a disk of steel. Through various experiments they sought to master those difficulties. The scalloped condition was deemed undesirable apparently for the reason that it necessitated the grinding down of the scallops from the edge of the products.

Appellants were not producers of steel. In their experiments they used steel which came from several sources, the most satisfactory of which was the Pittsburgh Cold Rolled Steel Company. After the year 1933 steel was no longer available from that company and thereafter appellants used in their experiments steel from the Thomas Steel Company. It appears that the steel from that company did not have the same properties for cold drawing that appellants found in the steel from the Pittsburgh Company. For quite some period of time they consulted with the Thomas Steel Company seeking to find some treatment for steel which would cold draw satisfactorily to their purposes; in other words, which would not show scalloped edges in the product. After many unsatis-factory samples had been submitted by the Thomas Company, it seems that sometime in December, 1937, that company was able to produce a steel which was suitable for the purposes of appellants, and a considerable quantity of such steel was ordered from that company.

In most of the experiments the product, after having been cold drawn, was annealed, but in many of them the annealing step was omitted.

The Board of Interference Examiners, after having carefully analyzed the evidence, held that appellants had no conception of the process which comprised in part the providing of a disk of steel "whose physical properties in all directions are substantially uniform" and therefore had no conception of the invention defined by the counts; that even if appellants were assumed to have had a conception of the invention there was no satisfactory proof of reduction to practice; and that delay in filing an application for an invention allegedly reduced to practice, while not conclusive, strongly suggested that the alleged reduction to practice was merely an abandoned and unsuccessful experiment. The board did not apply the doctrine of Mason v. Hepburn, 13 App.D.C. 86, invoked by appellee, apparently for the reason that there was not sufficient evidence of reduction to practice and therefore it was not necessary to consider that case.

Appellants contend here that they had a conception of the invention and that they reduced it to practice. In support of their contentions appellants state that the meaning of the expression contained in the counts "steel whose physical properties in all directions are substantially uniform" is met by steel which withstands deep drawing and deformation and does not scallop.

Steel which possesses the properties defined by the counts seems to be designated in the steel-making art as "non-directional steel".

It may be that the Pittsburgh Company's steel used by appellants was non-directional. If this were so, there is nothing in the record to show that either appellants or the Pittsburgh Steel Company knew that it was. The testimony of a witness appearing in rebuttal for appellee was that from 1924 to 1933 he was Vice-president and General Manager of the Pittsburgh Cold Rolled Steel Company; that he did not know "whether the physical properties of the transversal axis varies from the physi-

cal properties of the longitudinal axis; all the elongation in strip steel being in one direction"; and that his company never represented to the trade that steel such as that supplied for appellants' experiments had non-directional properties. The appellants, as far as this record is concerned, certainly did not realize that they needed non-directional steel; they did not know, any more than did the Pittsburgh Cold Rolled Steel Company official, that the steel of that company might have been non-directional. If they were acquainted with those physical properties, they certainly would have informed the Thomas Steel Company that they desired to secure non-directional steel. This they did not do.

Since appellants apparently did not know until after the patent to appellee issued that it was necessary to use non-directional steel in order to carry out the process defined by the counts, they clearly had no prior conception of the invention herein. Therefore they are not entitled to an award of priority. Rowe v. Holtz, 55 F.2d 468, 19 C.C.P.A., Patents, 970; Mergenthaler v. Scudder, 11 App.D.C. 264; Electro Metallurgical Co. et al. v. Krupp Nirosta Co., Inc., D.C., 33 F.Supp. 324, affirmed 3 Cir., 122 F.2d 314, certiorari denied 314 U.S. 699, 62 S.Ct. 480, 86 L.Ed. 559.

In view of our conclusion it is not necessary to consider any other ground set out in the decision of the board for awarding priority of invention of the involved subject matter to appellee.

The appeal as to counts 1 and 2 is dismissed and the decision of the Board of Interference Examiners awarding priority of the subject matter defined by counts 3 and 4 to appellee is affirmed.

Affirmed.