NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PROVISUR TECHNOLOGIES, INC.,**
*Appellant*

**v.**

**WEBER, INC.,**
*Cross-Appellant*

---

2021-1851, 2021-1852, 2021-1892, 2021-1893

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2019-01461, IPR2019-01462.

---

Decided: December 15, 2022

---

MICHAEL BABBITT, Willkie Farr & Gallagher LLP, Chicago, IL, argued for appellant. Also represented by REN-HOW HARN, SARA TONNIES HORTON, CRAIG C. MARTIN.

JON WRIGHT, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for cross-appellant. Also represented by DONALD BANOWIT, BRADY GLEASON, RALPH WILSON POWERS.

---

Before PROST, REYNA, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

On petitions filed by Weber, Inc. ("Weber"), the Patent Trial and Appeal Board ("Board") instituted inter partes review ("IPR") proceedings as to the patentability of U.S. Patent Nos. 7,065,936 (the "'936 patent") and 7,533,513 (the "'513 patent"), which are assigned to Provisur Technologies, Inc. ("Provisur"). The '936 patent covers an apparatus and the '513 patent covers a method, both relating to an industrial food production device for depositing food into containers.[1] The Board found most – but not all – of the claims in both patents to be unpatentable as obvious.

Provisur appeals based on what it contends is an erroneous construction of the patents' "multi-fill" limitation. We conclude that the Board's construction, which rejected Provisur's proposal to limit the claims to simultaneous deposits, was correct – and, even if it was not, any error was harmless. Weber cross-appeals the Board's failure to find certain claims of the '936 and '513 patents unpatentable. With respect to those claims, substantial evidence supports the Board's finding that Weber did not prove the required motivation to combine. Accordingly, we affirm the Board's determinations.

I

The '936 and '513 patents teach systems and methods that may be used in an industrial food processing facility to place prepared stacks of sliced food into containers. More particularly, the patents teach depositing drafts (that is, piles, stacks, or groups of thinly sliced food) into a grid of at least two by two containers (which the patents also call "pockets"). The invention uses a shuttle conveyer to

---

[1]    The '513 patent is a continuation of the '936 patent. They share a materially identical written description.

"fill the first row of pockets with drafts" before "retract[ing] to fill the second row of pockets." '936 patent at 2:50-54.

Claim 1 of the '936 patent recites:

> [a]n apparatus for filling food product drafts into packages, comprising:
>
>> a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station; and
>>
>> a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface, *said conveying surface* arranged above said fill station and *having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, and while said web remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.*

(Emphasis added)  Claim 1 of the '513 patent recites:

> [a] method for filling food product drafts into packages, comprising the steps of:

> supplying open top container portions arranged in rows that are spaced-apart along a longitudinal direction and having a first row and a longitudinally spaced-apart second row and connected to move longitudinally together, said first and second rows movable together along said longitudinal direction into a fill station;
>
> providing a conveyor having a retractable and extendable conveying surface, said conveying surface arranged above said fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, *moving said end region to said first position and depositing food drafts into container portions of said first row; and*
>
> *while said first and second rows are in said fill station, retracting or extending said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.*

(Emphasis added)  The emphasis shows what we, following the lead of the parties and the Board, refer to as the "multi-fill" limitation.

Dependent claim 6 of the '513 patent is representative of the "reverse-fill" limitation that is the subject of Weber's cross appeal.  It recites:

> [t]he method according to claim 1, comprising the further step of: after said first and second rows are filled, while said first and second rows advance to locate said succeeding group of empty rows of container portions in said fill station, said conveying surface retracts from an advanced position to a retracted position to fill a new first row of a succeeding group of empty rows of container portions.

Weber petitioned the Board to institute IPR proceedings on every claim of the '936 and '513 patents. Weber's petitions relied on three pieces of prior art relevant to this appeal: Honsberg, Weber446, and Hollymatic.[2] Honsberg teaches an apparatus for placing food into containers. It specifically discloses positioning food on the end of a conveyor above the containers. Then the conveyer is abruptly retracted so the ground is "taken from under the feet" of the food products, causing the food to drop into the containers below. J.A. 1229. Weber446 similarly describes depositing food by abruptly moving the conveyer so that the ground is removed from beneath the food. Hollymatic discloses a conveyer capable of multiple retractions that deposit product into multiple rows of containers and further teaches a second retraction step.

Weber argued that the independent claims of both patents were obvious over combinations of (1) Honsberg and Hollymatic or (2) Weber446 and Hollymatic. The Board instituted and decided that most of the claims were unpatentable for obviousness over both of Weber's combinations. In its Final Written Decisions, the Board found that Weber failed to prove the obviousness of only

---

[2] Weber relied on other prior art, in combination with Honsberg and Hollymatic, to satisfy additional limitations found only in dependent claims, none of which is pertinent to the appeal or cross-appeal.

the following claims: claims 5, 14, and 21 of the '936 patent and claims 6 and 7 of the '513 patent.  Provisur and Weber both appealed.[3]

## II

The parties agree that claims 1 and 10 of the '936 patent and claim 1 of the '513 patent require "multi-fill" deposition (also referred to as deposit) of slices into containers. They further agree that the "multi-fill" limitation requires the deposition of (1) multiple drafts into (2) multiple receptacles in a row before (3) moving to a new row to repeat the process.  They dispute whether the deposits in any single row must occur simultaneously and, if so, whether the prior art taught simultaneous deposits.

We review the Board's legal conclusions, including its claim construction, de novo and underlying factual findings for substantial evidence.  *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021).

## A

The Board construed "multi-fill" to include non-simultaneous deposition of drafts, including what the Board described as "piece-by-piece" or "one-by-one" deposition.  In other words, the Board found the claims may be met by depositing drafts one at a time into the containers in a given row so long as multiple containers in that row are filled with drafts before any container in the next row is filled. That is, as the Board explained, the multi-fill claim language is broad enough to cover "when drafts have a staggered arrangement on the conveyor belt and drafts are

---

3    The Board had subject-matter jurisdiction under 35 U.S.C. § 6.   We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

deposited one by one in the package pockets of each row" before moving to the next row.  J.A. 14, 87.

Provisur argues that the Board erred in rejecting its proposed narrower construction, which would require that all pockets in a single row be filled simultaneously.  We agree with the Board that the asserted claims do not require all drafts in a row to be deposited at the same time.

The patents' claims describe placing "drafts" into "container portions" in a first row and then depositing "drafts" into additional "container portions" in a second row.  '936 patent at claim 1; '513 patent at claim 1.  The claims contain no language requiring or even suggesting that deposits in a given row must occur simultaneously.  Nothing in the patents' written description or prosecution history narrows the claims in this manner either.

Provisur nonetheless contends that its proposed simultaneity requirement is evident from the '513 patent's use of the plural forms of "drafts" and "container portions."  But the plural language can also be read, instead, merely to mean that multiple drafts need to be placed – whether one at a time or simultaneously – into the multiple containers in each row before the device moves to a new row.  Or, as the Board put it, "the claims do not recite any particular timing or order for how the drafts are deposited: the claims merely require depositing a row of drafts in package pockets at each of the first and second positions."  J.A. 14, 87. We agree with the Board's rejection of Provisur's proposed construction.

Provisur also observes that the only embodiment disclosed in the patents shows simultaneous deposits.  Claim scope is not generally limited to the disclosed embodiments, even when the patent depicts only one.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent

8        PROVISUR TECHNOLOGIES, INC. v. WEBER, INC.

must be construed as being limited to that embodiment."). Provisur offers no persuasive explanation as to why a person of ordinary skill in the art would read its claims as limited to the one embodiment.

Provisur argues that because simultaneous deposits are more efficient and the specifications emphasize the benefits of the invention, reading the claims in the context of the written descriptions necessitates finding a simultaneity requirement. Yet the portions of the patents touting the benefits of the invention do not provide a definition or constitute a clear and unmistakable disclaimer of non-simultaneous deposits. Further, as we have previously held, "not every benefit flowing from an invention is a claim limitation." *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

As a final challenge to the Board's construction, Provisur asserts that the Board violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 554(b) and (c), in construing the multi-fill limitation because, in Provisur's view, the parties did not dispute the meaning of the term. Provisur complains that it was unfairly denied the opportunity to present its claim construction position and to respond to the construction the Board adopted.

We disagree. Provisur had adequate notice that the Board might adopt a construction of the "multi-fill" limitation that did not require simultaneity. Although Weber did not challenge Provisur's preferred construction in its replies, it had argued in its petitions that the Board should apply the plain and ordinary meaning of the term. Provisur, thus, was on notice that the term was at issue. *See generally WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1328 (Fed. Cir. 2018) ("[The] Board is not bound to adopt either party's preferred articulated construction of a disputed claim term.").

Unlike in *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1261-63 (Fed. Cir. 2021), where we faulted the Board for failing to give notice before it ruled on an otherwise undisputed claim construction issue that the Board had no briefing on, here Provisur's position on simultaneity was fully heard. In its Patent Owner Responses to Weber's petitions, Provisur set out its arguments for why simultaneity is required. Provisur argued to the Board that "the claim[s] require[] the end region to deposit 'drafts' into the 'container portions' at the same time," J.A. 2024, 2098, and further that Weber's references did not teach the "multi-fill" limitation because they did not (in Provisur's view) disclose simultaneous deposits. Provisur cannot demonstrate lack of notice and opportunity to respond when its own briefing addresses the very issue on which it claims it was not heard. *See Genzyme Therapeutic Prods. Ltd. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016). Accordingly, we reject Provisur's APA argument.[4]

We affirm the Board's construction of the "multi-fill" limitation and hold that the Board did not violate Provisur's rights under the APA. Since Provisur does not contend that its patents are valid under the Board's construction, we affirm the Board's finding of unpatentability of the claims at issue in Provisur's appeal.

B

Even if we were to conclude that the Board's construction of the "multi-fill" limitation was incorrect, we would

---

[4]    Provisur also argues the Board violated the APA in crediting an anticipation argument under the guise of obviousness. This argument is meritless. That the Board found claims obvious even though Weber argued the multi-fill limitation is disclosed completely in individual pieces of prior art is consistent with an obviousness inquiry.

still reach the same result.  The Board expressly analyzed Weber's prior art combinations under Provisur's preferred construction.  The Board had substantial evidence to support its findings that Weber's combinations of prior art taught simultaneously depositing stacks.

For the Honsberg-Hollymatic combination, the Board explained that Honsberg discloses simultaneous deposits.  Specifically, Honsberg describes depositing multiple drafts into multiple containers in a single row.  The Board further found that a subsequent piece of art, German patent application DE 4202915 A1, "suggests that Honsberg is capable of 'multi-fill' [i.e., multiple, simultaneous] deposition."  The Board additionally credited Weber's extrinsic evidence supporting the view that an artisan of ordinary skill would recognize that Honsberg could be used to simultaneously place drafts and that doing so would be more efficient than depositing drafts for a given row piece-by-piece.  Based on this substantial evidence, the Board found that Honsberg teaches "that multiple drafts are deposited in a single withdrawal of the slide in the multi-laned apparatus."

The Board's conclusions regarding the Weber466-Hollymatic combination were similar and equally supported by the record.  The Board found that Webber446 disclosed or suggested simultaneous deposits, noting that Webber446 described placing portions (plural) into containers.  The Board added that, based on the testimony of Weber's expert as well as Weber466's recitation of multiple lanes on the conveyor, a person of ordinary skill in the art would have used multiple rows to simultaneously deposit drafts to improve the rate of production.

In sum, there was substantial evidence to support the Board's findings that both Honsberg and Weber466 suggest simultaneously depositing multiple drafts into multiple containers in a row, rendering the claims at issue in Provisur's appeal invalid as obvious even under Provisur's

preferred construction of the "multi-fill" limitation. Thus, even if the claim construction were erroneous (and we have found it was not), such error would be harmless. *See In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) (explaining that Board errors not affecting outcome are harmless).

## III

In its cross-appeal, Weber challenges the Board's conclusion that the "reverse fill" claims – that is, claims 5, 14, and 21 of the '936 patent and claims 6 and 7 of the '513 patent – were not proven unpatentable. These claims involve depositing drafts starting from a retracted position of the conveyer and then moving to an extended position. The Board concluded that Weber failed to show that a person of ordinary skill in the art would have been motivated to achieve this arrangement. The Board's findings are supported by substantial evidence.

The Board heard testimony that "depositing food items in the advancing direction would double the number of steps necessary for deposition, adding needless complexity and increasing the likelihood of malfunction." J.A. 43, 119 (citing J.A. 2960-61). The Board recognized that because of this increased complexity, a person of ordinary skill in the art would have lacked motivation to combine the references and modify them to obtain the reverse fill configuration. This testimony was substantial evidence for the Board's conclusion.

Weber counters that a skilled artisan would have been capable of reversing the order in which the rows are filled. Even if a person of skill would have this knowledge, it does not necessarily follow that such an artisan would have any *motivation* to combine the prior art in this manner. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016).

Weber also contends that the Board erred in failing to consider both the advantages and disadvantages of its proposed reverse fill modification. Weber misconstrues the record. The Board's conclusion did not depend on a determination that the reverse-fill configuration was not the best configuration. Rather, the Board concluded there was no motivation to achieve the limitation, a finding substantial evidence supports.

Accordingly, we affirm the Board's determination that claims 5, 14, and 21 of the '936 patent and claims 6 and 7 of the '513 patent have not been proven unpatentable.

## IV

We have considered both parties' remaining arguments and find they lack merit and do not require discussion. Thus, for the foregoing reasons, we affirm the Board's decisions.

**AFFIRMED**

COSTS

Each party to bear its own costs.